UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WELLS FARGO BANK, NATIONAL ASSOCIATION,
a National Banking Association,

       Plaintiff,                      CASE NUMBER: 13-10121
                                              HONORABLE VICTORIA A. ROBERTS
v.

CANAL CROSSING PHOENIX LLC, a Michigan Limited
Liability Company, CANAL CROSSING PHOENIX #2 LLC,
a Michigan Limited Liability Company, BRUCE J. BRICKMAN,
individually and as Trustee of the Bruce J. Brickman Declaration of
Trust Dated December 20, 1991, as amended, GARY A. WEISMAN,
individually and as Trustee of Gary Alan Weisman Revocable Living
Trust Dated March 18, 1991, as amended, JOHN R. BOYD, individually
and as Trustee of the John R. Boyd Revocable Living Trust dated
March 4, 1991, as amended, and GARY L. RAN, individually and as
Trustee of the Gary L. Ran Living Trust Agreement Dated February 2, 2001,
as amended, Jointly and Severally,

       Defendants,

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FRCP 56(a) (Doc. #19)

### I. INTRODUCTION

      This matter is before the Court on a motion for partial summary judgment filed by Plaintiff Wells Fargo Bank ("Wells Fargo") against Defendants Canal Crossing Phoenix LLC ("Canal Crossing"), Canal Crossing Phoenix #2 LLC ("Canal Crossing #2"), Bruce Brickman ("Brickman"), Gary Weisman ("Weisman"), John Boyd ("Boyd"), and Gary Ran ("Ran").

1

There are two issues before the Court. The first issue is whether Wells Fargo is entitled to repayment under the Canal Crossing #2 Repayment Guaranties ("Land Loan #2") prior to foreclosure on its collateral. The second issue is whether the liability of Land Loan #2 Guarantors Brickman and Weisman should be limited to 50% of the post-land-sale obligations of Canal Crossing #2.

The Court holds that Wells Fargo is entitled to the full indebtedness under the Canal Crossing #2 Repayment Guaranties prior to the prospective sale of the real estate; and, Guarantors Brickman and Weisman are each liable for 50% of the total pre-sale balance of Land Loan #2.

Wells Fargo's motion for partial summary judgment is **GRANTED**.

## II. BACKGROUND

The facts of this case are not in dispute. Wells Fargo negotiated two loans with developers Weisman, Brickman, Ran, and Boyd of Canal Crossing, related to the acquisition of undeveloped real estate in Phoenix, Arizona.

On December 13, 2007, Wells Fargo executed Land Loan #2 to Canal Crossing #2 in the amount of $2,940,000. Canal Crossing #2 later executed a Promissory Note in favor of Wells Fargo for the original principal amount of $2,940,000. Developers Brickman and Weisman secured Land Loan #2 individually and as Trustees of their respective Trusts by executing separate Repayment Guaranties. Under the Repayment Guaranties, Brickman and Weisman agreed jointly and severally, to pay 50% of the principal balance of Land Loan #2. The maturity date of the loan was October 1, 2010. On December 7, 2012, Canal Crossing #2 and Brickman and Weisman received a

Notice of Default from Wells Fargo, requesting immediate payment of the overdue balance of principal, interest, late charges, and attorney fees associated with Land Loan #2, totaling $3,115,654.43.

On May 21, 2008, Wells Fargo agreed to loan Canal Crossing $6,600,000 ("Canal Crossing Loan") to develop four (4) industrial warehouse buildings in Arizona. Canal Crossing executed a Promissory Note in favor of Wells Fargo for the original principal amount of $6,600,000. As Trustees of their respective trusts, Brickman, Weisman, Boyd, and Ran executed separate Repayment Guaranties securing the Canal Crossing Loan. The maturity date of the loan was May 1, 2012. On December 7, 2012, Canal Crossing and the Guarantors received a Notice of Default from Wells Fargo, requesting immediate payment of the indebtedness under the Canal Crossing Loan.

The land collateralizing the Canal Crossing Loan was sold in January 2013. After the net sale proceeds had been applied, the overdue balance of principal and interest is $1,597,101.78 minus $14,340.00, based on Wells Fargo's withdrawn claim for attorneys fees. Wells Fargo thus seeks $1,582,761.78; Brickman, Weisman, Boyd, and Ran each to pay twenty-five (25%) percent. Interest continues to accrue.

In April 2013, Wells Fargo was advised that a buyer approached Canal Crossing #2 to purchase the land (evidenced in Land Loan #2) for $1,800,000. The buyer subsequently placed a non-refundable six-figure deposit on the land. The Maricopa County Planning and Zoning Commission has begun the necessary zoning process. However, Wells Fargo will not agree to release its lien on the real estate unless and until Brickman and Weisman first pay 50% of the pre-sale balance of Land Loan #2. The

pre-sale balance of Land Loan #2 is $3,115,654.43 minus $57,087.77, based on Wells Fargo's withdrawn claim for attorney fees. Wells Fargo thus seeks $3,058,566.66; Brickman and Weisman each to pay fifty (50%) percent. Interest continues to accrue.

## III. ANALYSIS

### A. Standard of Review

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). For a summary judgment motion to be granted, "the burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case.'" *Bennett v. City of Eastpointe,* 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Rule 56 does not require that "the moving party support its motions with affidavits or other similar materials negating the opponent's claim." *Id.* at 324.

After the movant has met his burden by showing an absence of any genuine issue of material fact, the burden shifts to the non-moving party to make a showing of sufficient evidence to allow a trier of fact to find in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). When the district court reviews motions for summary judgment, "credibility judgments and weighing of the evidence are prohibited. Rather, [both] the evidence [and reasonable inferences] should be viewed in the light most favorable to the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

**B. Wells Fargo is Entitled to Summary Judgment for Breach of the Canal Crossing Loan, Land Loan #2, and Corresponding Promissory Notes (Counts I & III).**

Under Michigan law, the elements of a breach of contract claim are: (1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury. *Burton v. William Beaumont Hospital*, 373 F. Supp.2d 707, 718 (Ed. Mich. 2005) (citing *Webster v. Edward D. Jones & Co., L.P.,* 197 F.3d 815, 819 (6th Cir. 1999)).

Defendants do not contest liability under the Canal Crossing Loan and corresponding promissory note. Defendants also do not contest liability under Land Loan #2 and its corresponding promissory note.

By defaulting on Land Loan #2 and the Canal Crossing Loan, Canal Crossing and Canal Crossing #2 breached their contractual obligations under the Loan Agreements. Wells Fargo is entitled to summary judgment on Counts I and III of the First Amended Complaint.

**C. Wells Fargo is Entitled to Summary Judgment Under the Canal Crossing Loan Repayment Guaranties (Count IV).**

Brickman, Weisman, Ran, and Boyd secured the Canal Crossing Loan. Pursuant to the Canal Crossing Loan Repayment Guaranties, they are each liable for 25% of the total outstanding indebtedness:

> "Upon the occurrence of any event referred to in section 9.1 of the Loan Agreement, each Guarantor hereby guaranties and promises to pay to Lender or order, on demand, in lawful money of the United States, in immediately available funds, the sum of twenty-five (25%) percent of (1) the amount of the indebtedness evidenced by the Note (as determined by

Lender in writing but not sooner than the date the indebtedness becomes due and payable, whether by acceleration or otherwise . . . ." Repayment Guaranty, Exhibit 9, ¶ 1.

Defendants do not contest liability under the Canal Crossing Loan Repayment Guaranties. By failing to repay the outstanding balance under the Canal Crossing Loan, Brickman, Weisman, Boyd, and Ran breached their contractual obligations under the corresponding Repayment Guaranty. Wells Fargo is entitled to summary judgment against each Guarantor on Count IV of the First Amended Complaint.

**D. Wells Fargo is Entitled to Summary Judgment Under the Land Loan #2 Repayment Guaranties Prior to Foreclosure On Its Collateral (Count II).**

**1. WELLS FARGO IS NOT OBLIGATED TO CONSENT TO THE SALE OF THE COLLATERAL UNLESS IT WILL BE PAID IN FULL.**

Brickman and Weisman secured Land Loan #2, each agreeing to be liable for 50% of the total outstanding indebtedness. While Defendants do not contest liability under the Land Loan #2 Repayment Guaranties, they do dispute Wells Fargo's entitlement to partial summary judgment under the Canal Crossing #2 Repayment Guaranties *prior to foreclosure on its collateral*.

Wells Fargo contends that its decision to pursue judgment under the Canal Crossing #2 Repayment Guaranty prior to any prospective land sale is supported by language in the Repayment Guaranties. Brickman and Weisman argue that there should be no judgment on Land Loan #2 until the land is sold, accounted for, or determined to have been abandoned by Wells Fargo. They also say that the liability of Land Loan #2 Guarantors Brickman and Weisman should be limited to 50% of the post-land-sale obligations of Canal Crossing #2.

6

The Repayment Guaranties plainly permit Wells Fargo to pursue judgment prior to foreclosure on its collateral:

> "Guarantor further waives any and all rights and defenses that Guarantor may have because Borrower's debt is secured by real property; this means, among other things, that: (1) *Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by the Borrower . . . ."* Repayment Guaranty, Exhibit 4, ¶ 4 (emphasis added).

It is well settled that "if the language of a contract is unambiguous, the language is reflective of the parties' intent as a matter of law." *Burton,* 373 F. Supp.2d at 718 (citing *Quality Prods. and Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251 (Mich. 2003)). The above language is clear and unambiguous, and authorizes Wells Fargo's decision to pursue repayment under the Canal Crossing #2 Repayment Guaranties without prior foreclosure on its collateral.

Wells Fargo's decision to pursue judgment under the Canal Crossing #2 Repayment Guaranties prior to a prospective land sale is also supported by Michigan law. In *Comerica Bank v. Cohen,* 805 N.W.2d 544 (Mich. App. 2010), Comerica Bank filed a complaint alleging default on a loan. Pursuant to the repayment guaranty, defendant "unconditionally and absolutely" agreed to pay 30% of the indebtedness. As in this case, defendant contended that plaintiff failed to mitigate damages by not approving a proposed sale of the property. Defendant contended that either some or all of his obligation would be satisfied by the proposed sale. Also as in this case, plaintiff refused to consent to the land sale, and pursued judgment for breach of the guaranty.

The trial court granted plaintiff's summary judgment motion for the full indebtedness; the trial court found the plain language of the repayment guaranty to be

7

clear and unambiguous, and acknowledged the repayment guaranty as an independent obligation owed by defendant to plaintiff. See also *Angelo Iafrate Co. V. M & K Development Co.,* 264 N.W.2d 45, 48 (Mich. App. 1978). The trial court found no merit in the defendant's argument that the obligation under the guaranty would be satisfied by partial payment by the borrower after sale of the land collateral securing the note.

On appeal by defendant, the Michigan Court of Appeals upheld the trial court's ruling:

> By the plain language of the guaranty, defendant unconditionally and absolutely agreed to pay 30 percent of the indebtedness and plaintiff was not required to foreclose on the real estate or proceed against other collateral before seeking payment from defendant. Furthermore, even if plaintiff *did* collect money through foreclosure, plaintiff would not be required to offset those funds against the money due from defendant unless the payment by defendant would result in recovery of more than 100 percent of the indebtedness. *Comerica Bank,* 805 N.W.2d at 550.

### 2. THE CASE CITED BY DEFENDANTS IS NEITHER AUTHORITATIVE NOR ON POINT.

Defendants rely heavily on *TMG Life Ins. Co. V. Ashner,* 898 P.2d 1143 (Kan. App. 1995), which it states is directly analogous to this case.

This Kansas appellate court opinion has no precedential value in this Court. Also, it is not analogous. In *TMG,* the Kansas court affirmed a lower court judgment interpreting the contract language, "from time to time" in loan documents. The court held, "[i]n all of the cases upon which TMG relies, the limit on the guaranty was fixed rather than indexed to the outstanding debt. Regardless of the rule in such cases, the language in the contract before us provides that the guarantors' liability is limited to "one-third of the amount of the Loan from time to time outstanding."

Defendants rely on *TMG* to support their argument that "from time to time" means that guarantors get credit for the value of the security in determining their 50% obligation, whether or not the land is sold now or later. This reliance on *TMG* is misplaced. The plaintiff lender in *TMG* <u>chose</u> to foreclose on the property when it was not required to do so. Similar to the repayment guaranty in *TMG,* the plain language of the Repayment Guaranties provides that Wells Fargo can pursue judgment under the guaranty without first foreclosing on its collateral.

Because Wells Fargo has not made the decision to foreclose on its collateral, *TMG* does not require Wells Fargo to foreclose on the real estate prior to proceeding against Brickman and Weisman under the Canal Crossing #2 Repayment Guaranties.

### 3. REASONABLENESS OF WELLS FARGO'S DECISION TO PURSUE REPAYMENT PRIOR TO ANY PROSPECTIVE LAND SALE.

Defendants argue that Wells Fargo's refusal to consent to the sale of the land is unreasonable. However, Wells Fargo informed Brickman and Weisman that if the prospective land sale is to be completed, they must pay the full outstanding balance of the loan at the time of closing. Furthermore, the plain language of the Guaranty indicates that Wells Fargo is not obligated to foreclose on its collateral prior to seeking judgment against Defendant Guarantors. *See Comerica Bank,* 805 N.W.2d at 550 ("[T]he terms of the guaranty are clear and unambiguous, and there is no merit to the contention that the obligation under the guaranty would be satisfied by partial payment by borrower pursuant to the prospective sale of the collateral securing the note.").

Defendants also contend that Wells Fargo has the duty to mitigate its damages by agreeing to the prospective land sale. The Court disagrees. In *Comerica Bank,* the

9

court recognized that plaintiff bank had the right to mitigate its damages, but held that "pursuant to the guaranty defendant's obligation is an absolute guaranty of payment and plaintiff was not required to foreclose on the real estate before proceeding against defendant." *Id.* at 551. Here, Brickman and Weisman agreed to pay 50% of the outstanding indebtedness under Land Loan #2. Their obligations were an absolute guaranty of payment. Thus, Wells Fargo is not obligated to consent to a prospective sale of the property only to have Brickman and Weisman pay 50% of the post-land-sale obligation under Land Loan #2. *Id.* at 550 ("[E]ven if plaintiff [Comerica Bank] did collect money through foreclosure, plaintiff would not be required to offset those funds against the money due from defendant unless the payment by defendant would result in a recovery of more than 100% of the indebtedness.").

Wells Fargo's decision to pursue repayment under Land Loan #2 prior to any sale of the property is reasonable and supported by the plain language of the Repayment Guaranties. Brickman and Weisman breached their contractual obligations under the Repayment Guaranties by failing to pay 50% of the outstanding Land Loan #2 balance. Wells Fargo is entitled to summary judgment on Count II of the First Amended Complaint.

## IV. REASONABLENESS OF ATTORNEY FEES

Defendants say that there is a genuine issue of material fact concerning the amount of damages Wells Fargo claims for attorney fees. In response, Wells Fargo withdrew its request for attorney fees as part of the partial summary judgment motion; it will seek recovery of attorney fees and other costs after judgment has been rendered.

Therefore, the Court will not consider the reasonableness of Wells Fargo's claim for attorney fees now.

## V. CONCLUSION

Wells Fargo's motion for partial summary judgment is **GRANTED.** Partial judgment will enter in favor of Wells Fargo as follows:

    (1)    Count I against Canal Crossing #2;

    (2)    Count II against Brickman and Weisman;

    (3)    Count III against Canal Crossing; and

    (4)    Count IV against Brickman, Weisman, Ran, and Boyd.

Plaintiff must present a Judgment to the Court for entry within 14 days of this Order.

**IT IS ORDERED.**

          /s/ Victoria A. Roberts
          Victoria A. Roberts
          United States District Judge

Dated: October 28, 2013

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 28, 2013.

S/Linda Vertriest
Deputy Clerk

---